# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) WHALEN KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number 16-cv-399-TCK-TLW |
| | ) | |
| (1) SOUTHWEST AVIATION | ) | |
| SPECIALTIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT SOUTHWEST AVIATION SPECIALTIES, LLC'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Respectfully submitted,

ROBINETT, SWARTZ & AYCOCK

By:  *s/ Tracy W. Robinett*
Tracy W. Robinett, OBA No. 13114
Charles R. Swartz, OBA No. 22313
Dylan T. Duren, OBA No. 31837
624 South Boston Avenue, Suite 900
Tulsa, Oklahoma 74119
(918) 592-3699
(918) 592-0963 *(facsimile)*
trobinett@robinettlawfirm.com

*Attorneys for Defendant Southwest Aviation Specialties, LLC*

## TABLE OF CONTENTS

Page(s)

**INTRODUCTION** 1-3

**STATEMENT OF MATERIAL FACTS AS TO WHICH NO** 3-6
**GENUINE DISPUTE EXISTS**

**ARGUMENT AND AUTHORITY** 7

    I.      Standard for Summary Judgment 7

    II.    Southwest is Entitled to Summary Judgment on King's 7-10
           Claim that Southwest Discriminated Against Him on
           the Basis of Race

    III.   Southwest is Entitled to Summary Judgment on King's 10-15
           Claim that Southwest Terminated His Employment for
           His Opposition to Unlawful Discrimination

**CONCLUSION** 15

## TABLE OF AUTHORITIES

### Cases             Page(s)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 7

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................................................. 7

*Hall v. U.S. Dep't of Labor, Admin Review Board*, 476 F.3d 847 (10th Cir. 2007)...................... 8

*Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000) ................................. 9

*Luster v. Vilsack*, 667 F.3d 1089 (10th Cir. 2011)........................................................................... 8

*Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266 (10th Cir. 2005) ......................................... 9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ................................................. 8, 11, 14

*Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997) ................................................................... 9

*Rivera v. City & Cnty. of Denver*, 365 F.3d 912 (10th Cir. 2004).......................................... 8, 14

*Simms v. Okla., ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321
(10th Cir. 1999)............................................................................................................................... 9

*Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160 (10th Cir. 2007) .................... 13

*Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160 (10th Cir. 2007)................................................. 14

### Statutes

42 U.S.C. § 2000e – 2(a)(1) ...................................................................................................... 7, 11

OKLA. STAT. tit. 25, § 1101 ........................................................................................................ 7, 10

OKLA. STAT. tit. 25, § 1302(A)(1).............................................................................................. 7, 10

### Rules

FED. R. CIV. P. 56.............................................................................................................................. 1

LCvR 56.1 ........................................................................................................................................ 1

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) WHALEN KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number 16-cv-399-TCK-TLW |
| | ) | |
| (1) SOUTHWEST AVIATION | ) | |
| SPECIALTIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Southwest Aviation Specialties, LLC ("Southwest"), pursuant to FED. R. CIV. P. 56 and LCvR 56.1, submits the following Motion for Summary Judgment.

## INTRODUCTION

This action was initiated in Tulsa County District Court Case Number CJ-2016-1986 ("State Court Action"). It was removed to this Court on June 27, 2016.

Southwest is a Tulsa-based limited liability company which provides a variety of aviation services at the Richard Lloyd Jones, Jr. Airport in Jenks, Oklahoma, including, but not limited to, aircraft sales, aircraft management, aircraft brokerage, aircraft maintenance, aircraft repairs, and avionic installation and repairs. In July, 2014, Southwest hired Plaintiff Whalen King ("King"), an African-American, as an avionics technician and installer. During his employment, he was well-liked and important to Southwest's avionics department. King worked for Southwest continuously through March, 2015, at which time his employment ended.

The material facts in this case are largely undisputed. King's claims against Southwest arise from a single remark made at a weekly meeting with co-workers in a Southwest airplane hangar. The meeting in question occurred on a Monday morning following a nationally-

publicized incident at the University of Oklahoma in which Sigma Alpha Epsilon fraternity pledges were caught on video singing a racist chant on a bus.  As King and his co-workers began to gather for the Monday morning meeting, the video, and particularly the language used by the college students, were being discussed.   During the discussion, a comment was made by Southwest representative Bill Copple ("Copple"), a Caucasian, which King found to be offensive.

While the exact words of the comment are in dispute, the gist of the comment is not. King's version of Copple's comment is:  "Pardon me, but a lot of my friends are niggers and some of them are not niggers."  Copple's version of his comment is: "I was raised on the north side of Tulsa and some of my best friends were black and I can tell you from experience that the word 'nigger' has nothing to do with a person's skin color."  Copple has since explained that he hated what happened on that bus.  King asserts that the comment in question was directed at him, while Copple asserts that the comment was made to the entire group attending the meeting.  It is undisputed that King was not engaged in the discussion.

King did not voice his objection to the comment at the time it was made, nor did King ever report or complain about the comment to Southwest management or ownership.  King, by his own admission, only mentioned the comment to several non-managerial co-workers and one person not employed by Southwest.  One of those conversations was with co-worker Branwen Erven ("Erven"), the Southwest receptionist/office manager.  According to King's version of the conversation, he advised Erven that he was "thinking about quitting" because of the comment. According to Erven's version of the conversation, King initially stated that he was "thinking about quitting," but at the end of the conversation, advised Erven that he was giving his "two-weeks notice," *i.e.*, he was in fact quitting his employment at Southwest.

Following her conversation with King, Erven texted or e-mailed Southwest owner David Guzman ("Guzman") about King's "two-weeks notice."   In turn, Guzman asked King's supervisor, Copple, to confirm the same with King and, if confirmed, to issue his last paycheck and request that he leave the property.   It is the policy of Southwest that for aviation-related safety reasons, once an employee who performs any type of work on aircraft resigns or expresses his or her intent to resign, he or she is not allowed to perform additional work on any aircraft and must leave the premises as soon as practical.

King and Copple met shortly thereafter for less than five minutes.   According to King, Copple advised King that he had heard about his "two-weeks notice."   King did not correct Copple or say anything to the contrary, nor did King address the comment he believed to be racist.   For whatever reason, King wanted Copple to think that King had voluntarily resigned. According to King, Copple also told him that he was "disrupting the company with complaining."   Yet, King did not address that issue either.   King then gathered his belongings and last paycheck and left the premises of Southwest.

These are the basic facts on which King bases his claims.   Under the Oklahoma Anti-Discrimination Act and Title VII of the Civil Rights Act of 1964, King asserts that Southwest discriminated against him by "harassing him on the basis of his race" and that Southwest retaliated against him by "terminating his employment for his opposition to unlawful discrimination."   For the reasons set forth below, Southwest contends that summary judgment should be entered in its favor.

## STATEMENT OF MATERIAL FACTS
## AS TO WHICH NO GENUINE DISPUTE EXISTS

1.   Southwest is a Tulsa-based limited liability company which provides a variety of aviation services at the Richard Lloyd Jones, Jr. Airport in Jenks, Oklahoma, including, but not

limited to, aircraft sales, aircraft management, aircraft brokerage, aircraft maintenance, aircraft repairs, and avionic installation and repairs. (*See* Affidavit of David Guzman, attached hereto as Exhibit 1).

2.      In July, 2014, Southwest hired King, an African-American, as an avionics technician and installer. (*See* Plaintiff's Original Petition in State Court Action, Paragraph 10, attached hereto as Exhibit 2).

3.      Southwest considered King a very knowledgeable avionics technician, an asset to the company and very likeable. (*See* deposition transcript of William Copple, p. 63, LL. 3-14 attached hereto as Exhibit 3; *see* deposition transcript of David Guzman, p. 31, LL. 3-8, attached hereto as Exhibit 4).

4.      On or about March 9, 2015, as King and other Southwest employees were gathering in a Southwest airplane hangar for a weekly meeting, a group discussion was had about an incident which occurred the previous weekend at the University of Oklahoma involving a racist chant by several Sigma Alpha Epsilon fraternity pledges. (*See* Plaintiff's Original Petition in State Court Action, Paragraphs 12 and 13, attached hereto as Exhibit 2).

5.      According to Copple, he made the following remark about the language used in the video: "I was raised on the north side of Tulsa and some of my best friends were black and I can tell you from experience that the word nigger has nothing to do with a person's skin color." (*See* deposition transcript of William Copple, p. 48, LL. 12-25; p. 49, LL 1-20, attached hereto as Exhibit 3).

6.      According to Copple, his remark was not directed at King, but rather, it was a part of a conversation in a group of guys. (*See* deposition of William Copple, p. 50, LL. 13-23, attached hereto as Exhibit 3).

4

7.      According to King, Copple instead made the following remark about the language used in the video: "Pardon me, but a lot of my friends are niggers and some of them are not niggers." (*See* deposition transcript of Whalen King, p. 63, LL. 22-25; p. 64, LL. 1-10, attached hereto as Exhibit 5).

8.      According to King, Copple looked at King when he made the remark and did so in a "hateful" manner.  (*See* deposition transcript of Whalen King, p. 63, LL. 22-25; p. 64, LL. 1-10; p. 68, LL. 10-16, attached hereto as Exhibit 5).

9.      King did not object or tell Copple at the meeting, or at any time, that King was offended about the comment in question.  (*See* deposition transcript of Whalen King, p. 70, L. 25; p. 71, LL. 1-5, attached hereto as Exhibit 5).

10.      King did not report or complain about the comment in question to anyone at Southwest he considered to be in a management position, including Guzman, the owner of Southwest.  (*See* deposition transcript of Whalen King, p. 76, LL. 13-25; p. 77, LL. 1-25; p. 78, LL. 1-14; p. 88, LL. 6-25; p. 89, LL. 21-25, attached hereto as Exhibit 5).

11.      King only mentioned the comment in question to Robin Watkins, who did not work for Southwest, Erven, "Kim," "JT" and "Ray."  (*See* deposition transcript of Whalen King, p. 72, LL. 13-25; p. 73, LL. 1-8; p. 82, LL. 18-22; p. 86, LL. 22-25; p. 87, LL. 1-25; p. 88, LL. 1-25, attached hereto as Exhibit 5).

12.      According to King, he advised Erven that he was "thinking about quitting." (*See* deposition transcript of Whalen King, p. 80, LL. 6-14, attached hereto as Exhibit 5).

13.      According to Erven, King initially advised her that he was "thinking about quitting," but subsequently told her that he was putting in his "two-weeks notice," *i.e.*, quitting.

5

(*See* deposition transcript of Branwen Erven, p. 15, LL. 20-25; p. 16, LL. 1-25; p. 17, LL 1-8, attached hereto as Exhibit 6).

14.     For aviation-related safety reasons and to protect the pilots and passengers who fly in aircraft on which it works, Southwest has a policy that once an employee who performs any type of work on aircraft resigns or expresses his or her intent to resign, he or she is not allowed to perform any additional work on any aircraft and must leave the premises as soon as practical. (*See* Affidavit of David Guzman, attached hereto as Exhibit 1).

15.     After her conversation with King, Erven advised Guzman by text or e-mail that King had put in his "notice" and was quitting (*See* deposition transcript of Branwen Erven, p. 17, LL 21-25; p. 18, LL 1-18, attached hereto as Exhibit 6).

16.     Upon learning of King's notice, Guzman instructed Copple to confirm the same and, if confirmed, to escort King off the premises (*See* deposition transcript of David Guzman, p. 29, LL. 24-25; p. 30, LL. 1-25, p. 31, LL. 1-2, attached hereto as Exhibit 4).

17.     When King met with Copple and Copple advised King that King had given Southwest his "two-weeks notice," King said nothing to the contrary and did not attempt to correct him.  King "let [Copple] assume that [King] was going to quit."   (*See* deposition transcript of Whalen King, p. 81, LL. 1-25, attached hereto as Exhibit 5).

18.     According to King, Copple also advised King that he "was disrupting the company with complaining"; however, King did not try to correct Copple and did not address the comment in question. (*See* deposition transcript of Whalen King, p. 81, LL. 1-8; p. 84, LL. 8-25, attached hereto as Exhibit 5).

19.     The meeting between King and Copple lasted "[n]o more than five minutes." (*See* deposition of Whalen King, p. 83, LL. 18-20, attached hereto as Exhibit 5).

6

## ARGUMENT AND AUTHORITY

### I.   Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, the nonmoving party must set forth sufficient evidence that a reasonable jury could find in his favor. *Id.* at 251. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

### II.   Southwest is Entitled to Summary Judgment on King's Claim that Southwest Discriminated Against Him on the Basis of Race

In his Original Petition filed in the State Court Action, King alleges that Southwest violated the Oklahoma Anti-Discrimination Act set forth in OKLA. STAT. tit. 25, § 1101, *et seq.* by discriminating against King by harassing him on the basis of his race. OKLA. STAT. tit. 25, § 1302(A)(1) specifically provides that "[i]t is a discriminatory practice for an employer . . . to discriminate against an individual because of race . . ."

King also alleges in his state court Original Petition that Southwest violated Title VII of the Civil Rights Act of 1964 by discriminating against King by harassing him on the basis of his race. 42 U.S.C. § 2000e-2(a)(1) specifically provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, or privileges of employment, because of such individual's race . . ." Because King's state and federal claims

7

essentially require the same factual and legal analysis, they are analyzed together for the purpose of brevity.

King cannot establish direct evidence of discrimination against Southwest. "A statement that can plausibly be interpreted two different ways – one discriminatory and the other benign – does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Hall v. U.S. Dep't of Labor, Admin Review Board*, 476 F.3d 847, 855 (10th Cir. 2007) (citation omitted). The comment voiced by Copple can certainly be interpreted in two different ways and amounts to nothing more than an expression of his opinion about the language used in the video in question. "Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination, because the trier of fact must infer discriminatory intent from such statements." *Hall,* 476 F.3d at 855 (citation omitted). In the absence of direct evidence of discrimination, the Court should apply the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Under the burden-shifting test, to succeed on his state and federal discrimination claims, King must first establish a *prima facie* case by demonstrating that:

> (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination.

*See Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citation omitted). If King can establish a *prima facie* case of discrimination, then the burden shifts to Southwest to "articulate some legitimate, nondiscriminatory reason" for its employment action. *McDonnell Douglas,* 411 U.S. at 802. The Tenth Circuit, in *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924-925 (10th Cir. 2004), stated:

8

> [t]he relevant inquiry is not whether the employer's proffered
> reasons were wise, fair or correct, but whether it honestly believed
> those reasons and acted in good faith upon those beliefs.

Once Southwest articulates a legitimate reason for the alleged adverse employment action, if any, King must then demonstrate that Southwest's reason for the action was a pretext for discrimination. *See Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations omitted). The Tenth Circuit has held that the Court "does not act as a super personnel department that second guesses employers' business judgments." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir. 1999) (abrogated on other grounds). There "must be at least a logical connection between each element of the *prima facie* case and the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (citation omitted).

While King can establish the first element of a *prima facie* case of discrimination, (*i.e.*, that he is a member of a protected class), he cannot satisfy the second and third elements. He clearly did not suffer an adverse employment action, nor can he demonstrate that the "action," even if one occurred, was invoked under circumstances giving rise to an inference of discrimination. Even assuming that King can meet this burden, he cannot establish that the action, if any, was a pretext for discrimination.

9

There are two versions of the comment in question. Irrespective as to which version is more accurate, the purpose of the statement is important, as it was an undisputed attempt by Copple to express his disdain for the content of the fraternity video. As Copple explained in his deposition, he "hate[d] what happened on that [fraternity] bus." Regardless of whether Copple was looking King's way when he made the comment, neither version of the comment directly concerned King, neither version of the comment was about King and neither version of the comment had anything to do with King's employment with Southwest. Most significantly, neither version of Copple's comment resulted in an adverse employment action. The Court should determine that this one single comment uttered before a group of employees and having nothing to do with King cannot, by itself, be considered discrimination or harassment. Further, without an adverse employment action, King's claim fails.

Even assuming that some adverse employment action occurred, King has presented no evidence whatsoever that it was a pretext for discrimination. One isolated comment perceived to be offensive simply does not give rise to a claim of discrimination. Again, the comment in question was made in a group of employees. It did not specifically concern King, but rather, was "water cooler" talk following a nationally-publicized incident. The comment did not amount to harassment. Summary judgment should be entered in favor of Southwest on King's claim that Southwest discriminated against him based on his race.

### III.   Southwest is Entitled to Summary Judgment on King's Claim that Southwest Terminated His Employment for his Opposition to Unlawful Discrimination

In his Original Petition filed in the State Court Action, King alleges that Southwest violated the Oklahoma Anti-Discrimination Act set forth in OKLA. STAT. tit. 25, § 1101, *et seq.* by terminating his employment for his opposition to unlawful discrimination. OKLA. STAT. tit.

25, § 1302(A)(1) specifically provides that it is "a discriminatory practice for an employer . . . to discharge . . . an individual . . . because of . . . race."

King also alleges in his state court Original Petition that Southwest violated Title VII, 42 U.S.C. § 2000e, *et seq.* 42 U.S.C. § 2000e – 2(a)(1) makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race." Again, because King's state and federal claims essentially require the same factual and legal analysis, they are analyzed together herein. Also, King's second proposition that he was terminated because he opposed unlawful discrimination has a very similar legal analysis to his first proposition.

Before the Court examines the undisputed facts under the *McDonnell Douglas* test, Southwest suggests that the Court must first be satisfied that King can factually demonstrate that (1) he was subjected to discrimination and an adverse employment action on the basis of his race; (2) he properly opposed the alleged discrimination and/or adverse employment action; and (3) he was involuntarily terminated because of the opposition.

Southwest suggests that if King's first proposition – that Southwest discriminated against him on the basis of race – fails, then so does his second proposition – that he was terminated for opposing the discrimination. For if there was no discrimination and no adverse employment action, there was no unlawful termination. Because King's first proposition is without merit, his second proposition likewise has no merit.

Southwest also suggests that if King cannot demonstrate that he opposed the alleged discrimination to Southwest management or ownership, he cannot assert a claim that he was terminated as a result thereof. By his own admission, King did not report the comment in question, nor "oppose" the perceived discriminatory conduct to any member of Southwest

11

management.   Significantly, King failed to report the comment to Southwest's owner, David

Guzman.    Without any evidence that he reported the alleged discriminatory comment to

Southwest management or ownership, or that he opposed the same, King's wrongful termination

claim fails.  King's claim is further weakened by the undisputed fact that he chose not to address

his complaint about the comment in question when he met with Copple.

As for whether King was involuntarily terminated by Southwest, his version of the one

and only conversation with a Southwest manager (Bill Copple) is critical to the Court's analysis:

> Q.     [By Mr. Robinett] He [Bill Copple] said that he heard that
> you had quit.  Did I understand that correctly?
>
> A.     [By Whalen King] No.  He [Bill Copple] said that I was - -
> I was disrupting the company with complaining.  And at this time
> he felt that I was being a problem and that since you had already
> gave us your two weeks' notice, we're going to go ahead and
> terminate you right now.  That's what I was told.
>
> **Q.     Did you tell him that he was mistaken about giving a
> notice?**
>
> **A.     No.  I let him do all the talking and let him assume that
> I was going to quit.  That's what I did.**
>
> Q.     You didn't object?
>
> A.     He was not listening to what I was saying.  He had it in his
> mind that he was getting rid of me and that's what he done.
>
> **Q.     But when he said because you've already given us your
> two-week notice, you didn't say anything in response?**
>
> A.     **I did not respond to him** because he had already assumed
> that that's what he - - he didn't try to come out there - - if he
> already heard it from her, why didn't he come out there and ask me
> about it?  He did not approach me about none of this.

(emphasis added).  (*See* deposition transcript of Whalen King, p. 81, LL. 1-25, attached hereto as

Exhibit 5).

The important aspects of King's version of his conversation with Southwest manager, Bill Copple, are that King made no mention of the comment giving rise to this litigation and more remarkably, King admittedly led Copple (and thus, Southwest) to believe that King had voluntarily terminated his employment.   When Copple referenced King's "two-week notice," King did not attempt to correct him: "I let him do all the talking and let him assume that I was going to quit.  That's what I did."  Given this testimony, King cannot seriously contend that he was fired by Southwest.

Because King cannot establish that he was involuntarily terminated from Southwest, he cannot assert a claim for unlawful termination.  Logically, when an employer tells an employee that the employee has voluntarily resigned his employment and the employee intentionally leads his employer into this belief, the employee cannot later bring a claim based on involuntary termination.  For this reason alone, King's second claim for unlawful termination fails.

To establish a *prima facie* case for unlawful termination based on racial discrimination, King must establish that he (1) is a member of a protected class; (2) was qualified for his position; (3) was terminated despite his qualifications; and (4) was terminated under circumstances which give rise to an inference of unlawful discrimination.  *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007) (citations omitted).  Again, Southwest concedes that King, an African-American, is a member of a protected class and readily acknowledges that he was qualified for his job.  However, as argued above, Southwest vigorously disputes that it terminated King.  Once King announced his intent to resign and/or was silent when Southwest inquired about such intent, Southwest accepted his resignation and asked him to leave the premises in strict accordance with its safety policy.  This uncontested fact defeats the third prong of King's *prima facie* case for wrongful termination.

13

In the event the Court does, in fact, determine that King has satisfied the foregoing burden, Southwest must promote a legitimate reason for the termination. As set forth in *Rivera v. City & Cnty. of Denver*, 365 F.3d at 924-925:

> [t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.

Southwest's burden at this stage is "exceedingly light." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165 (10th Cir. 2007).

It is difficult for Southwest to assume, even for the sake of argument, that King was terminated and to argue that his termination was for a nondiscriminatory reason. Perhaps the best approach is to suggest that if King can somehow convince the Court through the undisputed deposition testimony that he was terminated, Southwest's good faith reasoning was based on its presumption that King had expressed his intent to quit. But for King's conversation with Erven expressing his intention to quit and but for his effort to mislead Copple into thinking that he wanted to quit, there never would have been a separation of employment. The Affidavit of David Guzman attached hereto as Exhibit 1 expresses the rationale for disallowing potentially disgruntled employees in safety-sensitive positions from working on Southwest aircraft. Those same aircraft may be up in the air the next month, the next week or the next day. It is a life-safety policy issue which any pilot or passenger would appreciate. For a Southwest avionics technician and installer to even feign the intent to resign at Southwest results in a separation of employment.

At the third stage of the *McDonnell Douglas* analysis, King also fails. He can present no evidence whatsoever that his separation of employment from Southwest was a pretext to race discrimination. Whether the stray comment in question constitutes racial discrimination is

14

highly questionable.  And, King failed to oppose it or bring it to management's attention.  To then intentionally mislead Southwest into believing that he resigned seals the fate of his claim. His claim for wrongful termination is without merit.

## CONCLUSION

For the reasons set forth above, Southwest respectfully requests the Court to enter summary judgment in its favor and against King on his claims asserted herein.

Respectfully submitted,

ROBINETT, SWARTZ & AYCOCK

By:   *s/ Tracy W. Robinett*
Tracy W. Robinett, OBA No. 13114
Charles R. Swartz, OBA No. 22313
Dylan T. Duren, OBA No. 31837
624 South Boston Avenue, Suite 900
Tulsa, Oklahoma  74119
(918) 592-3699
(918) 592-0963 *(facsimile)*
trobinett@robinettlawfirm.com

*Attorneys for Defendant Southwest Aviation Specialties, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of January, 2017, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kevin T. Wakley, OBA No. 32596
kevin.wakley@sprouselaw.com
110 W. 7th Street, Suite 2710
Tulsa, Oklahoma  74119

*Attorney for Whalen King*

/s/ Tracy W. Robinett
Tracy W. Robinett

16