# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WHALEN KING, | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 16-CV-399-TCK-tlw |
| | ) |
| SOUTHWEST AVIATION | ) |
| SPECIALTIES, LLC, | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment (Doc. 21) of Defendant Southwest Aviation Specialties, LLC ("Defendant" or "Southwest").

### I.  Factual Background

Southwest is a Tulsa-based limited liability company that provides aviation services at the Richard Lloyd Jones, Jr. Airport in Jenks, Oklahoma. In July 2014, Plaintiff Whalen King ("Plaintiff" or "King") was hired as an avionics technician and installer for Southwest. Plaintiff was well-liked, and Southwest considered him to be a knowledgeable and valued employee.

In March 2015, as Plaintiff and others were gathering in a Southwest airplane hangar for a weekly meeting, some employees began discussing a widely publicized video recording of an incident involving the Sigma Alpha Epsilon ("SAE") fraternity at the University of Oklahoma ("SAE Incident"). The SAE Incident involved several individuals reciting a racist chant that included the word "nigger" and referred to lynching. Plaintiff was the only African-American present during this discussion of the SAE Incident. Plaintiff testified that during the discussion, another employee repeatedly asked Plaintiff if Southwest should paint the University of Oklahoma's helicopter. Bill Copple ("Copple"), Plaintiff's supervisor and a manager at Southwest, then made

a comment regarding the SAE Incident. The content and circumstances surrounding Copple's remark are disputed. Plaintiff testified that Copple turned to him and said, "pardon me, but a lot of my friends are niggers and some of them are not niggers." (King Dep. 64:6-8.) Plaintiff testified that Copple delivered his remark in a "hateful" and "derogatory" way. (*Id.* 64:16-19; 68:15-16.) Plaintiff felt Copple was "trying to get a rise out of me." (King Aff. ¶ 6.) Southwest disputes that Copple made this remark. According to Copple, he said instead, "I was raised on the north side of Tulsa and some of my best friends were black and I can tell you from experience that the word nigger has nothing to do with a person's skin color." (Copple Dep. 49:11-16.) Copple testified that he made the remark to a group and not specifically to Plaintiff. (*Id.* 50:13-16.)

Plaintiff claims that he complained about Copple's remark to multiple employees at Southwest. Sometime after Copple's remark about the SAE Incident, on a Wednesday or Thursday, Plaintiff went to the office of Branwen Erven ("Erven"), the Office Manager for Southwest. Plaintiff told Erven about Copple's remarks and expressed that he was offended and disappointed in Copple's comments and actions.[1] According to Erven, Plaintiff initially told her that he was thinking about quitting but, by the end of their conversation, he resigned and gave his two weeks' notice. Erven testified that she was "shocked [King] was going to quit over one statement." (Erven Dep. 16:10-12.) Plaintiff admits he told Erven he was thinking about quitting but denies giving his two weeks' notice of resignation.

According to Plaintiff, when he complained to Erven, two other Southwest employees were also present, including Roy Ledesma ("Ledesma"), Parts Manager for Southwest. Southwest denies

---

[1] While it is clear from the record that the pivotal events in this case took place in March 2015, the record generally does not include specific dates. Where relevant, the Court notes information that is available from the record about the timing of events.

2

that Erven is in management and argues that Plaintiff's conversation with Erven about Copple's remark did not constitute a complaint to Southwest management. Plaintiff admits he did not complain to Copple about Copple's remark about the SAE Incident. Copple testified that no one mentioned the discussion of the SAE Incident to him.

On the day Plaintiff spoke to Erven, David Guzman ("Guzman"), the owner of Southwest, was out of town. After Plaintiff's conversation with Erven, Erven contacted Guzman by email or text and advised him that Plaintiff had given his two weeks' notice. Guzman testified that the next day, he returned to the office. Guzman contacted Copple and instructed him to confirm whether Plaintiff had given his notice and was quitting, and if so, to escort Plaintiff off the premises. Guzman testified that for aviation-related safety reasons, Southwest has a policy that once an employee who performs any type of work on aircraft resigns or expresses his or her intent to resign, he or she is not allowed to perform any additional work on any aircraft and must leave the premises as soon as practical. (First Guzman Aff. ¶ 6 (Mot. for Summ. J., Ex. 1).)

Plaintiff continued to report to work after his conversation with Erven until Friday of that week, March 20, 2015. According to Plaintiff, on that day, Copple called Plaintiff into his office; told Plaintiff that he was "disrupting the company with complaining"; stated that Plaintiff had resigned and given his two weeks' notice; and instructed Plaintiff to turn in his tool box and leave immediately. (King Dep. 81:1-8.) Plaintiff admits that he did not try to correct Copple or dispute that he had given his notice. Plaintiff "let [Copple] assume that [he] was going to quit" because it was clear that Copple was firing him. (*Id.* 81:9-25; King Aff. ¶ 6.) Plaintiff testified that Copple was not listening to him, and Plaintiff did not see any point in arguing with him. (King Aff. ¶ 6.)

3

On May 25, 2016, Plaintiff filed a complaint in Tulsa County District Court against Southwest, alleging violations of the Oklahoma Anti-Discrimination Act ("OADA"), O.S. 25 §§ 1101 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. The complaint alleges Southwest discriminated against Plaintiff by harassing him on the basis of race and retaliated against Plaintiff by terminating his employment based on his opposition to unlawful discrimination. On June 27, 2016, Southwest removed the action to this Court. On January 13, 2017, Southwest filed its Motion for Summary Judgment (Doc. 21).

**II.     Summary Judgment Standard**

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

**III.    Objections to Material**

As a preliminary matter, the Court will address objections to certain material submitted with and/or discussed in the briefing on the motion for summary judgment. The following determinations

4

are for the purpose of summary judgment only and do not constitute a ruling on any pending or future motions regarding the admissibility of any material at a later stage of the proceeding.

Southwest objects to two exhibits (Doc. 24-1 and Doc. 24-2) submitted with Plaintiff's response to Southwest's motion for summary judgment. The Court has not considered the two exhibits Southwest objects to for the purpose of its summary judgment analysis, and there is no need to address the objections at this time.

Plaintiff objects to three new affidavits attached to Southwest's reply to the motion: the second affidavit of Guzman (Doc. 26-2), the affidavit of Ledesma (Doc. 26-4), and the affidavit of Kim Chapman ("Chapman") (Doc. 26-5). Plaintiff argues the affidavits were improperly included with the reply because they do not address issues newly raised in Plaintiff's response. For the purpose of Southwest's motion for summary judgment, the Court will consider the second affidavit of Guzman and the affidavits of Ledesma and Chapman because they address arguments made in Plaintiff's response to the motion for summary judgment. *See* LCvR 7.2(h) (permitting reply briefs "regarding new matter in the response brief").

## IV. Summary Judgment Analysis

Southwest moves for summary judgment on all claims asserted against it. Consistent with the parties' briefing, the Court applies the same factual and legal analysis to Plaintiff's state and federal law claims.

### A. Racially Hostile Work Environment

The Court construes Plaintiff's claim for racial harassment as asserting a claim for a racially hostile work environment. The elements of a racially hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subject to unwelcome harassment;

(3) the harassment was based on race; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007).[2] In addition to these four elements, a plaintiff must also establish a basis for employer liability. *See Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013). The standard for imposing employer liability varies based on numerous factors, such as whether the harassment was created by a co-worker or supervisor. *See id.* at 650-53 (explaining that employer can be found vicariously liable, even absent any showing of negligence, if hostile work environment was created by a supervisor).[3]

To survive summary judgment on a claim alleging a racially hostile work environment, a plaintiff must prove that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

---

[2] In *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221-22 (10th Cir. 2015), the Tenth Circuit implied that the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies to hostile work environment claims. However, in *Harsco Corporation v. Renner*, 475 F.3d 1179 (10th Cir. 2007) (the case cited in *Lounds* for the four-part "prima facie" elements), the Tenth Circuit described the four-part test as "elements" and did not discuss a burden-shifting framework. *Harsco*, 475 F.3d at 1186.

Assuming that burden-shifting is helpful in some hostile work environment cases, the Court finds it unhelpful here. Defendant has not attempted to proffer a "legitimate reason" for creating a hostile work environment; it simply disputes that one was created. Accordingly, a pretext analysis is inapplicable. *See generally Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000), rev'd sub nom *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001) (explaining that "[w]hen a plaintiff proves that a hostile work environment existed, there is no legitimate justification for such an environment, and thus recourse to the *McDonnell Douglas* test is not warranted" because "[a] defendant's only option is to deny the charges or argue that defendant effectively remedied the situation").

[3] Southwest has not moved for summary judgment based on an absence of employer liability, and the Court does not address this issue.

6

conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of . . . [his race]." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks omitted) (citing *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012)). The conduct in question must be judged by both an objective and a subjective standard; this "dual standard asks both whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended." *Id.*

To determine whether a workplace environment rises to the level of hostile, courts look at the totality of the circumstances and consider factors such as: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is "physically threatening or humiliating, or a mere offensive utterance"; and (4) whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). "The run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris*, 666 F.3d at 664.

In this case, Southwest did not cite the above standards relevant to hostile work environment discrimination. Instead, Southwest cited standards applicable in ordinary disparate treatment cases and argued that Plaintiff failed to establish that he suffered an "adverse employment action." (*See* Mot. for Summ. J. 8.) The Court construes this argument as challenging the second and fourth elements of a hostile work environment claim – namely, that unwelcome harassment occurred or that any unwelcome harassment was so severe or pervasive that it altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. However, in deciding whether to grant Southwest's motion, the Court is mindful that Southwest articulated an imprecise

7

standard, that Southwest failed to provide the Court with arguments or authority specific to hostile work environment claims, and that Plaintiff lacked opportunity to respond with evidence in support of these more specific elements.

Southwest argues that Plaintiff did not suffer an adverse employment action, *i.e.*, unwelcome harassment, because Copple's comment constituted a single incident that took place before a group of employees and had nothing to do with King. Southwest further argues that the statement was benign, as Copple was simply expressing disdain for the content of the video depicting the SAE Incident, and that an isolated comment such as Copple's cannot support a hostile work environment claim.

Plaintiff has produced sufficient evidence to survive summary judgment on his racially hostile work environment claim. Under Plaintiff's version of events, Copple told Plaintiff that some of his friends "are niggers and some of them are not niggers." The parties dispute whether the remarks were directed at Plaintiff and whether a reasonable person in Plaintiff's position would have perceived the comment as racially offensive. However, Plaintiff subjectively deemed the comment as racially hostile, and the Court finds that a reasonable person could also deem the comment (as alleged by Plaintiff) to be offensive. Plaintiff testified that two individuals who were present during Copple's comments later "more or less" apologized to Plaintiff for Copple's comments, indicating that others in the group were not surprised Plaintiff deemed the comments offensive. (King Dep. 71:2-19.)

Southwest's briefing ignores that pervasiveness and severity are independent and equal grounds upon which a plaintiff may establish this element of a hostile environment claim. *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008). Even an isolated comment, if

8

sufficiently severe, can suffice to survive summary judgment. Plaintiff has created a question of fact as to severity for two reasons. First, the comment, as described by Plaintiff, involved use of the word "nigger," which courts have deemed "polluting" and "pure anathema." *See Lounds*, 812 F.3d 1208, 1229 (noting the "potentially strong polluting power of [] the time-worn word, 'nigger'"); *Rogers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (observing that "perhaps no single act can more quickly alter the conditions of employment" than "the use of an unambiguously racial epithet such as 'nigger' by a supervisor"). Second, the comment was made by Plaintiff's direct supervisor, an individual with control over the terms and conditions of Plaintiff's employment. A reasonable jury could conclude that Copple's reference to some people being "niggers," even one time, created a racially hostile work environment in which Plaintiff had to work. Further, because Southwest failed to expressly cite the "severe or pervasive" standard or couch its statement of material facts in terms of this standard, the Court is wary of making a factual determination that should be reserved for a jury. *See Lounds*, 812 F.3d at 1224 (explaining that severity or pervasive element is particularly unsuited for summary judgment); *McCowan v. All Star Maintenance*, 273 F.3d 917, 923 (10th Cir. 2001) (stating that the severity and pervasiveness question is "quintessentially a question of fact").

    **B.**    **Retaliation**

Under Title VII, an employer may not discriminate against any employee "because [he] has 'opposed' any practice made unlawful by Title VII, or because [he] has 'participated . . . in an investigation, proceeding, or hearing' regarding a claim of discrimination." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013) (citing *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004)). The *McDonnell Douglas* burden-shifting framework applies to retaliation claims. *Id.* Under this

9

framework, the aggrieved employee must first establish a prima facie case of prohibited employment action. *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). This burden is one of production (not persuasion), it can involve no credibility assessment, and it is not onerous. *Id.* "If the employee makes a prima facie showing, the burden shifts to the defendant employer to state a legitimate, nondiscriminatory reason for its adverse employment action." *Id.* "If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.*

> 1. **Prima Facie Case**

In order to establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) that a causal connection existed between the protected activity and the adverse action. *Tabor*, 703 F.3d at 1219.

> a. **Protected Opposition/Causal Connection**

Without citation to a specific element of the prima facie case or relevant case law, Southwest argues: "Southwest suggests that if King cannot demonstrate that he opposed the alleged discrimination to Southwest management or ownership, he cannot assert a claim that he was terminated as a result thereof." (Mot. for Summ. J. 11.) This argument appears to go to the issue of notice and causation, meaning if Plaintiff merely complained to Erven, a receptionist/office manager who did not make the termination decision, Southwest lacked notice of the complaint and cannot establish that it caused his termination.[4]

---

[4] Summary judgment is not granted based on a party's "suggestions." It is based on case law and citations to the factual record. The Court has endeavored to discern Southwest's "suggestions" but has no obligation to conduct research on its behalf.

Southwest is not entitled to summary judgment based on Plaintiff's inability to demonstrate these elements. First, the Court finds questions of fact as to Erven's exact title and role in the company, which could impact whether Plaintiff engaged in protected opposition to discrimination.[5] Second, and more importantly, the Court finds questions of fact as to whether Erven reported the racial complaint to management. Plaintiff has produced evidence that Copple, the individual who allegedly terminated Plaintiff, knew that Plaintiff had complained about Copple's remark. (Erven Dep. 18:15-19:14 ("I think Bill and I discussed [what King said], and I told him he was upset with the conversation that he had had with another person and he took offense to it."); King Dep. 81:3-5 (stating "[Copple] said that . . . I was disrupting the company with complaining").) Further, the alleged complaint and alleged termination occurred sufficiently close in time to raise an inference of causation.

### b. Adverse Action

Southwest contends that it did not take any adverse action against Plaintiff because Plaintiff voluntarily resigned. Southwest argues that (1) Plaintiff voluntarily resigned when he spoke to Erven; and (2) at a minimum, Plaintiff led Copple to believe that he had resigned by failing to respond when Copple indicated that Plaintiff had given his two weeks' notice.

Questions of fact preclude summary judgment on the issue of whether Plaintiff resigned or was terminated. Plaintiff denies that he gave his two weeks' notice to Erven and contends that he merely mentioned that he was considering giving his notice. Plaintiff states that on the Friday after his conversation with Erven, he was called into Copple's office around 10:00 a.m. (King Dep.

---

[5] Southwest did not cite any cases as to what types of comments are sufficient to constitute protected opposition to discrimination, and the Court does not reach that question.

79:23-80-25.) According to Plaintiff, Copple "said that [. . .] I was disrupting the company with complaining." (*Id.*) Plaintiff testified that Copple did not inquire as to whether Plaintiff had given his two weeks' notice; rather, Copple "stated that I had turned in a two-week notice to Erven and that I needed to leave immediately." (*Id.*; King Aff. ¶ 6.) Although Plaintiff admits he did not try to correct Copple's statement, this was because Copple "made it very clear that he wanted me gone right then." (King Dep. 81 (stating that in the meeting with Copple, "[i]t was obvious to me that I was getting fired").) Plaintiff also testified that after the meeting with Copple, Plaintiff told Guzman that he wanted his paycheck "since you fired me," and Guzman did not correct him. (King Dep. 84-85.) A reasonable jury could credit Plaintiff's testimony that he did not resign, that Copple failed to give him an opportunity to indicate he did not wish to resign, and that Copple terminated him involuntarily.

### 2. Legitimate, Non-Discriminatory Reason/Pretext

Southwest denies that it terminated Plaintiff. Southwest argues that, if it terminated Plaintiff, it did so based on a reasonable belief that he had resigned. Southwest further contends that Plaintiff was escorted off the premises due to its safety policy described above.

For reasons explained above, Plaintiff's evidence creates a question of fact as to whether he resigned or was terminated. In this case, because Southwest's "reason" for termination was that Plaintiff voluntarily resigned, this same evidence tends to demonstrate pretext. Further, Plaintiff contends that, during his meeting with Copple, Copple refused to listen to him, made clear that Copple "had it in his mind he was getting rid of me," and stated Plaintiff was causing trouble with his complaints. (King Dep. 80:19-81:17; King Aff. ¶ 6.) These disputes create a reasonable inference that, if Plaintiff was terminated, Southwest's proffered reasons for termination were a

pretext for retaliation. With respect to the safety policy, Plaintiff testified that he continued to work on airplanes between the time of his conversation with Erven and his meeting with Copple, raising an inference that this reason for escorting Plaintiff from the premises could also be a pretext for a retaliatory motive.

V.     Conclusion

Southwest's Motion for Summary Judgment (Doc. 21) is DENIED. Plaintiff's objection to Exhibit 2 (Doc. 26-2), Exhibit 4 (Doc. 26-4), and Exhibit 5 (Doc. 26-5) to Southwest's reply to the motion for summary judgment is OVERRULED.

The parties are ORDERED to submit a revised Pretrial Order setting forth revised issues of law in conformance with this Order, no later than two weeks from the date of this Order.

**Dated this 5th day of May, 2017.**

*[signature: Terence Kern]*

**TERENCE KERN**
**United States District Judge**